In re COMCAST CELLULAR
TELECOMMUNICATIONS
LITIGATION.

**Civil Action No. 96–CV–2418.**

United States District Court,
E.D. Pennsylvania.

Dec. 6, 1996.

Sherrie R. Savett, Bernard M. Gross, Law Offices of Bernard M. Gross, P.C., Roberta D. Liebenberg, Mager, Liebenberg & White, Philadelphia, PA, for Plaintiffs.

Jeanine M. Kasulis, Seamus C. Duffy, Drinker, Biddle & Reath, Phila. National Bank Bldg., Philadelphia, PA, for AWACS, Inc. d/b/a Comcast Metrophone, Defendant.

## MEMORANDUM

JAMES McGIRR KELLY, Judge.

Presently before the Court is Plaintiffs' Motion to Remand this case to the Court of Common Pleas for Philadelphia County pursuant to 28 U.S.C. § 1441(c) (1994), Defendant's response and Plaintiffs' reply. For the reasons set forth below, the Motion will be DENIED.

## BACKGROUND

Defendant, AWACS, Inc. d/b/a Comcast Metrophone, ("Comcast"), a Pennsylvania Corporation, provides cellular telephone service to customers in Southeastern Pennsylvania and in surrounding areas of Delaware, Maryland, and New Jersey. On February 23, 1996, Robert J. Opalka and Michael J. Revness ("Plaintiffs"), Pennsylvania residents, individually and on behalf of others similarly situated, filed a class action complaint against Comcast in the Court of Common Pleas for Philadelphia County. The purported class consists of all persons who contracted with Comcast for cellular telephone services during the period of February 15, 1990 to the present. Companion class actions making similar allegations were filed against Comcast by different named plaintiffs in state courts in both Delaware and New Jersey.

Plaintiffs' complaint arises from Comcast's practice of charging for the non-communication period from the time a call is initiated to the time when communication is actually established with the recipient. In addition, Plaintiffs also challenge Comcast's practice of "rounding-up" by billing in one minute increments. Plaintiffs assert that these policies are contrary both to standards in the communications industry and to consumer expectations and are inadequately disclosed to Comcast customers. In their original complaint filed with the Court of Common Pleas, Plaintiffs alleged only state causes of action: (1) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat.Ann. § 201–1, et seq. (1993); (2) breach of contract; (3) breach of the implied duty of good faith and fair dealing; and (4) unjust enrichment and restitution. Plaintiffs seek a variety of remedies, including compensatory damages and preliminary and permanent injunctions against Comcast's practice of billing for non-communication time. While Plaintiffs assert that their complaint is simply directed at Comcast's failure to disclose to customers its practice of charging for non-communication time, Defendant asserts that the true gravamen behind the Plaintiffs' complaint is a challenge to the

rates charged by Comcast for cellular telephone service.

On March 25, 1996, Comcast removed both the Pennsylvania and New Jersey actions to federal court asserting federal jurisdiction under 28 U.S.C. § 1331 (1994) stating that Plaintiffs' claims arise under the Federal Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.*, (1994) as amended and federal common law.[1] On May 7, 1996, the Plaintiffs filed the instant motion to remand pursuant to 28 U.S.C. § 1447(c), asserting that this Court lacks subject matter jurisdiction over this action.

## *PLAINTIFFS' MOTION FOR REMAND*

■ Plaintiffs' motion for remand is brought pursuant to 28 U.S.C. § 1447(c), which provides that an action removed to federal court may be remanded to state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." It is well settled that the burden of establishing federal jurisdiction falls upon the party seeking removal. *See Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991). In this case it is undisputed that the requirements for the assertion of diversity jurisdiction under 28 U.S.C. § 1332 are not met. Consequently, the only available basis for federal subject matter jurisdiction is the presence of a federal question such that original jurisdiction in federal court could have been asserted pursuant to 28 U.S.C. § 1331. In its petition for removal, Defendant contended that federal question jurisdiction existed because Plaintiffs' cause of action arises under the Communications Act and under federal common law.

## *FEDERAL REGULATION OF COMMERCIAL MOBILE RADIO SERVICES*

In recognition of the rapid growth of the wireless telecommunications services industry, in 1993, Congress amended the Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.* ("the Act") to provide a comprehensive and uniform federal regulatory framework for all commercial mobile radio services ("CMRS"). *See* Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, § 6002, 107 Stat. 312, 387–97 (1993). Pursuant to its stated goals of regulatory uniformity and deregulation of CMRS, Congress amended Section 332 of the Act to provide:

> no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a state regulating the other terms and conditions of commercial mobile services.

47 U.S.C.A. § 332(c)(3)(A) (West Supp.1996) States wishing to enforce existing regulations or impose new restrictions on CMRS rates must apply to the Federal Communications Commission ("FCC") for such authority. 47 U.S.C.A. § 332(c)(3)(A), (B). Congress gave the FCC the exclusive authority to rule on such applications. To date, the FCC has denied all such applications for regulatory authority. *See, e.g., Petition of New York State Public Service Commission to Extend Rate Regulation, Report and Order,* 10 F.C.C.R. 8187, 8202 (1995); *Petition of the Connecticut Department of Public Utility Control to Retain Regulatory Control of the Rates of Wholesale Cellular Service Providers in the State of Connecticut, Report and Order,* 10 F.C.C.R. 7025 (1995). The FCC has stated the federal policy as follows:

> "[o]ur preemption rules will help promote investment in the wireless infrastructure by preventing burdensome and unnecessary state regulatory practices that impede our federal mandate for regulatory parity." *Implementation of Sections 3(n) and 332 of the Communications Act Regulatory Treatment of Mobile Services, Second Report and Order,* 9 F.C.C.R. 1411, 1421 (1994) [hereinafter *CMRS Second Report and Order* ].

This preemption of the ability of States to regulate CMRS is, however, narrowly conceived. Under the original terms of the Communications Act, no diminution of exist-

---

1. There is no information before this court regarding the location and status of the Delaware action.

ing common law remedies was contemplated. *See* 47 U.S.C. § 414 ("Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."). Even under the terms of Section 332, states remain competent to regulate all aspects of CMRS except the entry of or the rates charged by such a service. *See* 47 U.S.C.A. § 332.

In furtherance of its goal of fostering rapid and uniform development of the CMRS industry through deregulation, Congress gave the FCC plenary authority to forbear from regulating CMRS providers under many of the common carriage provisions of the Act. 47 U.S.C.A. § 332(c)(1)(C). In addition, sole authority to address violations of the Act by CMRS providers was vested with the FCC and the federal district courts. Congress did, however, direct the FCC to continue to enforce Sections 201 (requiring just and reasonable rates, charges and practices), 202 (prohibiting unjust or unreasonable discrimination in charges and practices), and 208 (authorizing the filing of complaints against common carriers with the FCC). The FCC has stated:

> Compliance with Sections 201, 202, and 208 is sufficient to protect consumers in the event that a challenged carrier violated Section 201 or 202, the Section 208 complaint process would permit challenges to a carrier's rates or practices and full compensation for any harm due to violations of the Act. Although we will forbear from enforcing our refund and prescription authority, described in Sections 206 and 205, we do not forbear from Sections 206, 207, and 209, so that successful complainants could collect damages.

*CMRS Second Report and Order,* 9 F.C.C.R. at 1479.

Section 201(b) of the Communications Act provides that, "[a]ll charges, practices, classifications, and regulations for and in connection with such communications service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." Section 207 of the Act provides that any person alleging harm by a carrier under

Section 201(b) may make a complaint to the FCC under Section 208 or bring suit in federal court. 47 U.S.C. § 207. In either case, damages are available to aggrieved parties under the terms of the Communications Act. 47 U.S.C. §§ 207–209. Consequently, Congress and the FCC have ensured that an elaborate federal regulatory framework remains available to protect consumers against unjust and unreasonable charges and practices by CMRS providers and a federal forum is available to all individuals asserting a violation of the Act.

## REMOVAL JURISDICTION

The Third Circuit has ruled that removal jurisdiction is to be strictly construed and any doubts are to be resolved in favor of remand. *See Boyer,* 913 F.2d at 111. This policy is necessarily controlled by the recognition that any action taken by a federal court in the absence of jurisdiction is necessarily void. *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d Cir.1985). In addition, important federalism considerations regarding the relationship between the state and federal court systems dictate caution in finding removal jurisdiction. *See Shamrock Oil & Gas v. Sheets,* 313 U.S. 100, 104, 61 S.Ct. 868, 870, 85 L.Ed. 1214 (1941).

As a general rule, removal jurisdiction is further limited by the "well-pleaded complaint" rule, which provides that for federal jurisdiction to exist, a substantial federal question must be presented on the face of plaintiff's properly pleaded complaint. *Gully v. First Nat'l Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). Typically, the well-pleaded complaint rule makes the plaintiff the "master of the complaint." *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). A plaintiff may avoid federal jurisdiction by relying exclusively on state law for his or her cause of action. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). A defendant is not permitted to anticipate a federal defense as the sole basis for asserting federal subject matter jurisdiction. *Id.* at 393, 107 S.Ct. at 2430. Furthermore, simple federal preemption of a state claim will not provide a suffi-

cient basis for federal jurisdiction. *Id.* at 393, 107 S.Ct. at 2430.

■ There are certain very limited exceptions to the well-pleaded complaint rule. Federal jurisdiction may be found even in the absence of a federal question on the face of a plaintiff's complaint, if the area has been completely preempted. Complete preemption offers a narrowly available technique for recharacterizing a plaintiff's state law claims as federal claims. The Third Circuit has adopted a two-pronged test for determining the applicability of complete pre-emption. *Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 311–12 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1691, 131 L.Ed.2d 555 (1995). First, the party seeking removal must demonstrate that a federal statute contains civil enforcement provisions under which the plaintiff's state law claims could be brought. Second, the federal statute must contain "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64–66, 107 S.Ct. 1542, 1546–48, 95 L.Ed.2d 55 (1987)).

■ In addition, the doctrine of "artful pleading" is available in certain limited circumstances to recharacterize a plaintiff's state law claims as federal claims. Under the artful pleading doctrine, "a court will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim 'artfully pled' as a state law claim." *United Jersey Banks v. Parell,* 783 F.2d 360, 367 (3d Cir.), *cert. denied sub nom, First Fidelity Bancorporation v. Parell,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986) (citations omitted). Rather, "occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization." 14 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3722 at 564–66 (1976) (citations omitted). Once the true gravamen of a claim is determined to be federal, a federal court has subject matter jurisdiction over the claim, and the action may properly be removed.

## DISCUSSION

### I. *Plaintiffs' Claims*

Plaintiffs and Defendant differ drastically in their characterization of the gravamen of the complaint filed in this case. Much of the briefs filed surrounding the motion to remand focuses on whether the Plaintiffs' complaint is, as they assert, aimed solely at Comcast's failure to adequately disclose its practice of billing for non-communication time and rounding-up the length of calls. According to the Plaintiffs the focus of their complaint is Comcast's knowing failure to disclose that its billing practices are contrary to the accepted standards of the telecommunications industry and that as a challenge to Comcast's failure to disclose its practices their allegations do not fall within the coverage of the Act. In contrast, Defendant asserts that the true focus of the Plaintiffs' complaint is a challenge to the rates charged by Comcast for mobile telephone service. As a challenge to its rates, Comcast asserts that the Plaintiffs allegations fall squarely within the coverage of the Act. Indeed, Comcast contends that as a challenge to the rates it charges for cellular telephone service, the Plaintiffs' claims are explicitly preempted by Section 332 of the Communications Act. Thus, the characterization of the complaint is critical to the question of whether federal question jurisdiction under 28 U.S.C. § 1331 exists in this case.

■ All of Plaintiffs' claims against Comcast are made under state law; Plaintiffs do not allege any violations of the Federal Communications Act. Count I is brought pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.* The Plaintiffs assert that by charging for non-communication time, Comcast's billing practices are not in accordance with the custom and practice of the industry; thus, by failing to disclose the manner in which it calculates its charges, Comcast is engaging in an unfair and deceptive practice. Count II of the complaint asserts that Defendant's failure to disclose in its fee schedule that its charges are calculated in a manner inconsistent with the custom and practice of

the telecommunications industry constitutes a breach of contract. These claims focus on Comcast's alleged failure to disclose a particular billing practice; they do not challenge the reasonableness or legality of Comcast's billing practices themselves.

Similar allegations were made in *Weinberg v. Sprint Corporation* in which the plaintiff alleged that Sprint engaged in deceptive and misleading advertising by failing to disclose its practice of rounding up the length of calls. *See* 165 F.R.D. 431 (D.N.J.1996), *appeal dismissed,* Civ. No. 96–354, 1996 WL 673501 (D.N.J. May 23, 1996). In *Weinberg,* the court found that the plaintiff's claims of false advertising did not fall within the coverage of the Act; thus, holding that the Act "does not provide a remedy through which a customer may recover for a common carrier's failure to disclose a billing practice." *Id.* at 439. Similarly, in the companion suit filed against Comcast in New Jersey, parallel allegations of a violation of the New Jersey Consumer Fraud Act and breach of contract for knowing failure to disclose billing practices were found to fall outside the parameters of the Act. *DeCastro v. AWACS, Inc.,* 935 F.Supp. 541, *appeal dismissed,* 940 F.Supp. 692 (D.N.J.1996). Thus, a federal cause of action under the Communications Act would not be available to pursue these claims.

■ Plaintiffs assert that the remaining allegations in their complaint present a similar challenge to Comcast's failure to disclose its billing practices. Counts III and IV are not, however, so clearly directed at Comcast's advertising practices. Count III states, "[b]y billing and collecting from plaintiffs and the class for the non-communication period time, Defendant has breached the implied duty of good faith and fair dealing that it owed to plaintiffs and the other class members under the contract." *Complaint,* ¶ 37. Although the Plaintiffs have made their claim pursuant to Pennsylvania contract law, this allegation appears, on its face, to present a direct challenge to the reasonableness of Defendant's billing practices. *See DeCastro,* 935 F.Supp. at 550 (finding an identical allegation to present a challenge to the reasonableness of Defendant's billing practices). Plaintiffs' state claim parallels a claim for a

violation of the requirement imposed by Section 201(b) that a common carrier's charges and practices must be just and reasonable. As a challenge to Defendant's billing practices, Section 207 of the Communications Act would provide Plaintiffs with a federal cause of action for damages.

■ Count IV of Plaintiffs' complaint states,

[b]y billing and collecting from plaintiffs for the non-communication period time, Defendant has been unjustly enriched by millions of dollars at the expense of plaintiffs and the class. Moreover, ... Defendant's policy to charge for time in the whole minute increments, rounded up to the next minute has further unjustly enriched Defendant.

*Complaint,* at ¶ 39. Unjust enrichment is an equitable doctrine. Pennsylvania courts have defined the elements of unjust enrichment as " 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Styer v. Hugo,* 422 Pa.Super. 262, 619 A.2d 347, 350 (1993) (quoting *Wolf v. Wolf,* 356 Pa.Super. 365, 514 A.2d 901 (1986), *overruled on other grounds, Van Buskirk v. Van Buskirk,* 527 Pa. 218, 590 A.2d 4 (1991)). Thus, Count IV also presents a clear challenge to the reasonableness of the rates charged by Comcast for cellular phone services. *Accord DeCastro,* 935 F.Supp. at 550–51. As such, a federal cause of action under Section 207 would also be available to pursue any damages resulting from the practices alleged in this claim.

By way of relief, Plaintiffs seek compensatory damages, restitution by Defendant of all amounts collected through its unlawful business practices and treble damages as a result of the wrongs alleged under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. They also seek a preliminary injunction and, after a hearing, a permanent injunction preventing Comcast from billing or collecting from the Plaintiffs or from other class members for any non-communication period time. Plaintiffs also re-

quest an award covering attorney's fees and costs incurred in relation to this litigation. The remedies sought by the Plaintiffs further demonstrate that the true gravamen behind their allegations is a challenge to Comcast's rates and the way in which they are applied. Recovery of the amounts collected by Defendant through its alleged unlawful practices can be justified on the basis of nondisclosure. The injunctions demanded by the Plaintiffs do not, however, mandate disclosure or simply seek to enjoin Defendant's practice pending full disclosure. Rather, the Plaintiffs are seeking to permanently prevent Comcast from charging for the non-communication period. The request for such an injunction is nothing less than a request that the court regulate the manner in which Comcast calculates its rate schedules.

An examination of the Plaintiffs' complaint and the remedies that they seek demonstrates that the driving force behind their allegations is a desire to impose restrictions not only upon the way in which Comcast advertises its rates but also upon the rates which Comcast may charge for mobile telephone services. The basis for Counts III and IV of the Plaintiffs' complaint is the contention that the manner in which Comcast calculates the cost of cellular service is inconsistent with "the custom and practice of most providers of telecommunications services." *Complaint*, ¶ 26. Notwithstanding the Plaintiffs' vigorous assertions to the contrary, at its heart, this contention attacks the reasonableness of the method by which Comcast calculates the length and, consequently, the cost of a cellular telephone call. As such, the Plaintiffs' claims present a direct challenge to the calculation of the rates charged by Comcast for cellular telephone service. The remedies they seek would require a state court to engage in regulation of the rates charged by a CMRS provider, something it is explicitly prohibited from doing.

While it is true that, "[s]everal courts have found that state claims challenging the fairness of a billing practice are not completely preempted by the Communications Act," *De-Castro*, 935 F.Supp. at 552, the billing practices at issue in those cases had only a tangential relationship to the actual rates for service paid by customers. *See Esquivel v. Southwestern Bell Mobile Sys., Inc.*, 920 F.Supp. 713 (S.D.Tex.1996) (finding a liquidated damages provision for early termination of service to be a "term and condition" of service not a rate, and therefore subject to state regulation); *Commonwealth of Kentucky v. Comcast Cable of Paducah, Inc.*, 881 F.Supp. 285 (W.D.Ky.1995) (finding the practice of "negative option billing" to be subject to state regulation); *Commonwealth of Pennsylvania v. Comcast Corp.*, Civ. A. No. 94–CV–4142, 1994 WL 568479 (E.D.Pa. Oct. 11, 1994) (same). Unlike the allegations in these cases, the claims alleged by the Plaintiffs present a direct challenge to the way in which Comcast actually calculates the length of a cellular phone call and the rates which are charged for such a call. Thus, any state regulation of these practices is explicitly preempted under the terms of the Act.

## II. *Federal Common Law*

■■■■■ While a cause of action for damages pursuant to Section 207 of the Act would have been available to the Plaintiffs, they have attempted to circumvent federal jurisdiction by asserting only state claims. Typically, as the master of the complaint, a plaintiff is free to select the forum in which to proceed. This case, however, does not present a situation in which a plaintiff may simply choose between asserting his or her rights in federal or state court. To the extent that the Plaintiffs are requesting that a court regulate the rates which Comcast charges for its services, a state court would not be authorized to act.[2] 47 U.S.C.A. § 332. This preemption of state authority to act is normally not sufficient, by itself, to confer

---

**2.** It is undisputed that like legislative or administrative action, judicial action constitutes a form of state regulation. Thus, like state legislative action, state court adjudications threaten the uniformity of regulation envisioned by a congressional scheme. *See Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450

U.S. 311, 326, 101 S.Ct. 1124, 1134, 67 L.Ed.2d 258 (1981) ("A system under which each State could, through its courts, impose on railroad carriers its own version of reasonable service requirements could hardly be more at odds with the uniformity contemplated by Congress....").

subject matter jurisdiction in federal court. *Caterpillar,* 482 U.S. at 398, 107 S.Ct. at 2432. The preemptive effect of Section 332 should not, however, be examined in isolation. Rather, it must be analyzed in light of the entire federal regulatory framework embodied in the Communications Act.

The Communications Act is comprehensive legislation governing the rights and obligations of common carriers engaged in the provision of interstate telephone services. Due to the comprehensive nature of congressional regulation of the communications industry, a body of uniform federal common law has developed which preempts a variety of state claims in the communications area. Accordingly, even when a plaintiff does not allege a violation of a specific provision of the Communications Act, and removal is not available under the jurisdictional section of the Act, Section 207, the plaintiff's claims may be found to arise under federal common law such that 28 U.S.C. § 1331 would provide an adequate jurisdictional basis for removal.

Courts in the Second Circuit have led the way in the recognition and development of the body of federal common law surrounding the Communications Act. In the leading case of *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486 (2d Cir.1968), the Second Circuit Court of Appeals found that the outcome of plaintiff's claims of negligence in the provision of communications services was controlled by federal common law, thereby conferring federal subject matter jurisdiction. The court stated,

> questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law and ... the states are precluded form acting in this area. Where neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law.

*Id.* at 491. The court explained that the congressional purpose of equality of rates could "be achieved only if a uniform federal law governs as to the standards of service which the carrier must provide and as to the extent of liability for failure to comply with such standards." *Id.* Similarly, in *Nordlicht v. New York Tel. Co.,* 799 F.2d 859 (2d Cir.1986), *cert. denied,* 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987), the Second Circuit Court of Appeals found that despite the plaintiff's decision not to allege a violation of any specific provision of the Communications Act, common law claims of fraud and money had and received arose under federal common law and that federal subject matter jurisdiction was available under 28 U.S.C. 1331. *Id.* at 862.

In a case which closely parallels the one presently before this court, *Marcus v. AT & T Corp.,* 938 F.Supp. 1158 (S.D.N.Y.1996), the plaintiffs filed a class action in state court alleging violations of state consumer protection statutes and common law claims of fraud, negligent misrepresentation and unjust enrichment resulting from AT & T's alleged failure to disclose its practice of billing in one minute increments. AT & T removed the case to federal court and the plaintiffs moved to remand. In resolving the question of whether the complaint was properly removed, the court stated that,

> [t]he language of the statute, the filed rate doctrine developed thereunder, and *Ivy* and *Nordlicht* reveal that plaintiffs' claims for damages, no matter how artfully pleaded, arise under federal law. Plaintiffs challenge on fraud-based grounds the rates charged by AT & T and seek a refund of part of those rates in contravention of § 203(c). This court's construction of the Communications Act and the filed rate doctrine will determine the outcome of plaintiffs' claims.

*Id.* at 1167. Accordingly, the court held that under the artful pleading doctrine these claims should be recharacterized as federal claims, and that accordingly, it possessed subject matter jurisdiction to resolve the case. *Id.*

The Third Circuit Court of Appeals has also recognized the broad preemptive force of the Communications Act. *See MCI Telecommunications Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1093–96 (3d Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 64, 136 L.Ed.2d 25 (1996). The *Teleconcepts* case

presented the question whether an action for the collection of unpaid charges for long distance telephone service arose under federal law, such that jurisdiction could properly be found in federal court. In resolving the jurisdictional question, *Teleconcepts* contains a lengthy discussion of the Second Circuit Court of Appeals' decision in *Ivy Broadcasting* in which the court adopted the reasoning of *Ivy Broadcasting* over a more restrictive view of federal common law espoused by the Fifth Circuit Court of Appeals in *MCI Telecommunications Corp. v. Credit Builders of Am., Inc.*, 980 F.2d 1021 (5th Cir.), *vacated*, 508 U.S. 957, 113 S.Ct. 2925, 124 L.Ed.2d 676, *prior opinion reinstated*, 2 F.3d 103 (5th Cir.), *cert. denied*, 510 U.S. 978, 114 S.Ct. 472, 126 L.Ed.2d 424 (1993). *See Teleconcepts*, 71 F.3d at 1095–96. On the jurisdictional question, the court stated:

> MCI's action is based upon and draws its life from, the tariff that MCI filed with the Federal Communications Commission. The reasoning of *Ivy Broadcasting*, and the analogous cases decided under the Commerce Act persuade us that the district court did have subject matter jurisdiction over MCI's action and Teleconcepts' counterclaim.

*Id.* at 1096 (citations omitted). By endorsing *Ivy Broadcasting* and rejecting the more limited view of *Credit Builders*, the Third Circuit has recognized the need for a uniform federal common law governing claims brought in the communications area, even when those claims do not allege a specific violation of the Communications Act.

 Similarly, in a case brought by a telecommunications carrier seeking recovery for services provided, the District Court for the District of New Jersey recognized the broad preemptive effect of the Communications Act. *MCI Telecommunications v. Graphnet, Inc.*, 881 F.Supp. 126 (D.N.J.1995). The court found that "[a]s a result of the broad provisions of the Communications Act, courts have held that state causes of action based on regulated activities are preempted." *Id.* at 131. Thus, "[w]here a cause of action arises in direct relation to the provision of interstate communications services ... it is clear that the Communications Act governs."

*Id.* at 132 (citations omitted). Only those state causes of action which are distinguishable from those created under the Communications Act may be asserted in the interstate communications area. *Id.* at 131.

 The *Ivy Broadcasting* case and subsequent cases applying its reasoning have not been superseded by the Supreme Court's recent preemption rulings. *See Marcus* at 1167. The doctrine of complete preemption, applies only when Congress has "so completely preempted a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. at 1546. Thus when an area is completely preempted, any claim arises under federal law, whether the complaint mentions federal law or not. Due to the "extraordinary pre-emptive" power of the complete preemption doctrine, courts have been reluctant to find that an area is completely preempted. *See Id.* at 65, 107 S.Ct. at 1547; *see also Goepel*, 36 F.3d at 311–12 (adopting a narrow two prong test for complete preemption in the Third Circuit). The artful pleading doctrine, as applied in *Marcus*, however, provides "an alternatively sufficient basis for removal." *Marcus*, 938 F.Supp. at 1167.

 In this case, Plaintiffs have made a series of state law and common law allegations against Comcast. While none of these claims pose an explicit challenge to the rates charged by Comcast for cellular phone service, a careful reading of the complaint and the remedies sought by the Plaintiffs demonstrates that the true gravamen of the complaint is a challenge to Comcast's rates and billing practices. As such, a cause of action for damages under § 207 of the Communications Act would have been available to the Plaintiffs. Indeed, Counts III and IV of the Plaintiffs' complaint are indistinguishable from the cause of action for damages available to aggrieved parties under the terms of the Communications Act. Furthermore, under the language of Section 332, the only potential avenues for resolving a challenge to the rates charged by a CMRS provider are a complaint filed with the FCC or a suit filed in federal court. All state regulation of the

rates charged by CMRS providers is explicitly preempted by the language of the Act. *See* 47 U.S.C.A. § 332.

Typically, simple preemption of state regulation is insufficient to confer federal jurisdiction for the purposes of removal. *See Caterpillar*, 482 U.S. at 398, 107 S.Ct. at 2432. In this case, however, Plaintiffs deliberately obscured the true nature of their claims in an attempt to proceed with their action in state court without the restrictions imposed by the comprehensive regulatory scheme embodied in the Communications Act. Because a state court would be prevented from giving Plaintiffs the remedies they seek without engaging in regulation of the rates of a CMRS provider, it is apparent that by labeling their complaint as aimed solely at Defendant's failure to disclose its rates, Plaintiffs have engaged in the same type of artful pleading described in *Marcus*. This court will not allow the Plaintiffs to engage in artful pleading in an effort to deny the Defendant a federal forum. Rather, the Court will recharacterize Counts III and IV of Plaintiffs' complaint as federal claims arising under the Communications Act and the federal common law surrounding the Act. Accordingly, because Plaintiffs' claims arise under federal law, this court has subject matter jurisdiction and the complaint was properly removed.

This determination fully comports with the 1993 amendments to the Communications Act regarding the regulation of the CMRS industry. These amendments were designed to deregulate the CMRS industry in order to enhance the growth and development of the industry. In furtherance of this stated policy, Congress preempted any state or local regulation of the rates charged by CMRS providers, thereby avoiding the potential that a myriad of conflicting regulations issued by states and localities could thwart the comprehensive regulatory scheme embodied in the Communications Act. The facts of this case provide a compelling demonstration of the necessity of a federal forum in order to ensure uniform regulation. Comcast does business not only in Pennsylvania, but also in Delaware, Maryland and New Jersey. Virtually identical allegations to the ones contained in the complaint presently pending before this court were filed in state courts in Pennsylvania, Delaware and New Jersey creating the potential for three radically different determinations of Comcast's obligations to its customers regarding its rates and billing practices. Thus, this court's determination that Plaintiffs' claims arise under federal law is entirely consistent with the stated policies and goals of the Communications Act.

### III. *The Complete Preemption Doctrine*

Plaintiffs assert that the narrow view of the complete preemption doctrine espoused by the Third Circuit should be determinative of the jurisdictional issue in this case. They note, that the United States Supreme Court has found complete preemption in only two circumstances: under Section 301 of the Labor Management Relations Act, *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and Section 502(a) of ERISA, *Metropolitan Life,* 481 U.S. at 66–67, 107 S.Ct. at 1547–48. Furthermore, Plaintiffs also point to the decisions filed in *DeCastro v. AWACS, Inc.,* regarding the availability of the complete preemption doctrine in the context of the Communications Act. *See* 935 F.Supp. 541, *appeal dismissed,* 940 F.Supp. 692 (D.N.J.1996).[3] In *DeCastro,* the United States Magistrate Judge found that while certain of the New Jersey plaintiffs' claims could have been brought under the Communications Act, because the plaintiffs chose to rely solely on state causes of action, the well-pleaded complaint rule dictated that these claims were not removable to federal court. 935 F.Supp. at 548–555. The Magistrate Judge rejected the contention that federal subject matter jurisdiction could be premised upon complete preemption of the communications field, and the case was remanded to the New Jersey State Court. *Id.* at 555. On appeal to the District Court, the District Court Judge held, pursuant to 28

---

**3.** The opinions in *DeCastro* relate to litigation filed in New Jersey which is a companion action to the one presently pending before the court.

U.S.C. § 1147(d)[4], that the District Court lacked jurisdiction to review the decision to remand the case. In a footnote, the District Court Judge noted that had he had the authority to review the substance of the Magistrate Judge's opinion, he would have affirmed the determination that complete preemption was not warranted in the circumstances of the case. *Id.* at 696 n. 9.

Because this Court finds the artful pleading doctrine to provide a sufficient basis for finding federal jurisdiction, this opinion will not address the complex and unsettled question of whether the complete preemption doctrine is available in the context of the Communications Act. *See, e.g., Weinberg,* 165 F.R.D. at 439–40 (holding that the Communications Act does not completely preempt the field); *Vermont v. Oncor Communications, Inc.,* 166 F.R.D. 313, 317–318 (D.Vt.1996) (finding complete preemption). There was no discussion of the possible applicability of the artful pleading doctrine in either of the *DeCastro* opinions, thus; it is impossible to predict how the District Court for the District of New Jersey would have ruled on that question. Consequently, *DeCastro* can provide little guidance to this court in the ultimate resolution of the jurisdictional question presently before it. This court must, however, respectfully disagree with that court's decision to remand the New Jersey action to state court.

### IV. *The Savings Clause*

■ Finally, Plaintiffs assert that regardless of the basis upon which federal jurisdiction is premised, the savings clause of the Communications Act prevents this court from asserting jurisdiction over claims brought solely under state law. The savings clause provides:

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

47 U.S.C. § 414. The inclusion of a savings clause, Plaintiffs contend, demonstrates that Congress did not intend to displace existing state law remedies. "Inclusion of the savings clause 'clearly indicates Congress' intent that independent state law causes of action … not be subsumed by the Act, but remain as separate causes of action.' " *Weinberg,* 165 F.R.D. at 440 (quoting *Cooperative Communications, Inc. v. AT & T,* 867 F.Supp. 1511, 1515 (D.Utah 1994)). The savings clause, however, can only be read to preserve independent state law causes of action. *See, e.g., Comtronics, Inc. v. Puerto Rico Tel. Co.,* 553 F.2d 701, 707 n. 6 (1st Cir.1977); *Cooperative Communications.,* 867 F.Supp. at 1516 ("State causes of action may be asserted in the interstate communications context as long as they are distinguished from those created under the Communications Act.") (citations omitted). By inclusion of a savings clause, an Act cannot be read "to destroy itself." *Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 446, 27 S.Ct. 350, 358, 51 L.Ed. 553 (1907) (referencing the Interstate Commerce Act).

■ In this case, several of the claims brought by the Plaintiffs are indistinguishable from causes of action explicitly created by the terms of the Communications Act. Accordingly, the savings clause cannot plausibly be read to preserve state law claims which directly conflict with the preemption of state regulation of CMRS rates envisioned by Section 332 of the Act. *See Kellerman v. MCI Telecommunications Corp.,* 112 Ill.2d 428, 98 Ill.Dec. 24, 30, 493 N.E.2d 1045, 1051, *cert. denied,* 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986) ("it is implausible to think that section 414 of the Act preserved all State-law remedies affecting interstate telephone carriers no matter how repugnant those State laws are to the purposes and objectives of Congress."). Because the Plaintiffs' claims present a challenge to the rates charged by Comcast for cellular phone service, any state cause of action is preempted by the language of Section 332 of the Act; the savings clause cannot be read to undo

---

**4.** Section 1447(d) provides in relevant part that: An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title [relating to civil rights cases] shall be reviewable by appeal or otherwise.

this explicit statement of congressional intent.

### V. *Conclusion*

For the above stated reasons, removal of the Plaintiffs' claims brought under Counts III and IV of their complaint was proper. To the extent that Counts I and II raise state claims which are not preempted by federal law, supplemental jurisdiction exists because all claims asserted arise from the same nucleus of operative fact. 28 U.S.C. § 1367(a).