Guglielmo v. WorldCom et al.        CV-00-160-B    07/27/00

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Michael Guglielmo, Sr., et al.**

   **v.**                              Civil No. C-00-160-B
                                       Opinion No. 2000 DNH 169

**WorldCom, Inc., et al.**


### MEMORANDUM AND ORDER


Five family members and/or friends of a New Hampshire State Prison inmate filed a class action complaint in the Rockingham County Superior Court, naming as defendants three providers of interstate telephone services. The complaint alleges that the defendants -- WorldCom, Inc., ILD Teleservices, Inc., and ILD Telecommunications, Inc.[1] -- had agreements with the state of New Hampshire under which they enjoyed the exclusive right to provide interstate telephone services to inmates in the state prison

---

[1] Although defendant WorldCom, Inc. is currently known as MCI WorldCom, Inc., I follow the parties' lead by referring to the entity as "WorldCom" in this order. I also refer to ILD Teleservices, Inc. and ILD Telecommunications, Inc. collectively as "the ILD Defendants."

system.[2]  According to the complaint, these agreements, which required inmates wishing to communicate by telephone with out-of-state persons to make collect calls using the defendants' services, resulted in the recipients of the calls being charged at excessive rates.

Plaintiffs assert that as a result of the arrangement between the defendants and the state, the defendants are liable for (1) negligence committed by them and/or their employees (Counts I and II), (2) violation of the New Hampshire Combinations and Monopolies Act, N.H. Rev. Stat. Ann. Chapter 356 (Count III), and (3) violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. Chapter 358-A (Count IV).

WorldCom removed the action to this court pursuant to 28 U.S.C. § 1441(b), which permits removal of "[a]ny civil action of

---

[2]  The complaint is not entirely clear as to which defendants were parties to contracts with the state.  It can most reasonably be read to allege that WorldCom was a party to certain contracts with the state, that the ILD defendants were assignees of WorldCom's rights under some or all of these contracts, and that at least one of the ILD defendants also was a party to an amended contract with the state.  See Compl. (appended as Ex. A to Notice of Removal (Doc. #1)) ¶¶ 1, 3-10, 15, 25, 26, 27.

which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States."[3]  28 U.S.C. § 1441(b) (1994).  WorldCom asserted in its notice of removal that plaintiffs' claims arise under federal law even though they purport to be based on state law because the claims are completely preempted by the Federal Communications Act, 47 U.S.C. § 151 et seq. (the "FCA").

Plaintiffs have moved to remand pursuant to 28 U.S.C. § 1447(c).[4]  For the reasons set forth below, I reject WorldCom's complete preemption argument and remand the complaint to state

_____

[3]  WorldCom's notice of removal relied entirely on federal question jurisdiction and did not assert that this court has subject matter jurisdiction based on diversity of citizenship. See Notice of Removal (Doc. #1) ¶ 5.  Accordingly, I do not address diversity.  Moreover, although plaintiffs argue in their motion for remand that federal antitrust law does not completely preempt their claims, see Pls.' Mot. for Remand (Doc. #8) ¶ 18, I need not address this argument because "WorldCom never asserted that the complete preemption doctrine applied to federal antitrust law."  WorldCom's Mem. in Opp'n to Pls.' Mot. for Remand (Doc. #13) at 2 n.1.

[4]  Under 28 U.S.C. § 1447(c), an action removed to federal court shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c) (Supp. 1996).

court.

## I.

WorldCom's complete preemption argument necessarily depends upon an invocation of the filed rate doctrine, sometimes called the "filed tariff" doctrine. See WorldCom's Mem. in Opp'n to Pls.' Mot. for Remand (Doc. #13) at 5-10. In its original form, as developed under the Interstate Commerce Act, this doctrine "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 577 (1981). Where the filed rate doctrine applies, state law claims are preempted. See Nantahala Power & Light Co. v. Thornburg, 476 U.S. 953, 963 (1986) ("In this application, the doctrine is not a rule of administrative law designed to ensure that federal courts respect decisions of federal administrative agencies, but a matter of enforcing the Supremacy Clause.").

The FCA's filed rate provisions are contained in § 203 of the Act. Under § 203(a), common carriers are required to file

with the FCC "schedules" or tariffs "containing all their 'charges' for interstate services and all 'classifications, practices and regulations affecting such charges.'" American Tel. and Tel. Co. v. Central Office Tel., Inc., 524 U.S. 214, 217 (1998) [hereinafter "Central Office"] (quoting 47 U.S.C. § 203(a)). Section 203(c) essentially prohibits a carrier from charging a customer any rate other than that specified in the carrier's filed tariff. See 47 U.S.C.A. § 203(c) (West 1991). Relying upon these provisions, the Supreme Court recently held that the filed rate doctrine applies to the FCA. See Central Office, 524 U.S. at 222. The Court construed the doctrine broadly, concluding that it applies not only to the rate charged for tariffed services, but also to the terms and conditions upon which those services are provided. See id. at 223-24.

According to WorldCom's line of reasoning, because a carrier's filed tariff has the force of federal law, see Fax Telecommunicaciones Inc. v. AT&T, 138 F.3d 479, 488 (2d Cir. 1998); Marcus v. AT&T Corp., 138 F.3d 46, 56 (2d Cir. 1998);

*Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488-89 (7th Cir.), cert. denied, 524 U.S. 952 (1998), and is "the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff," *Central Office*, 524 U.S. at 230 (Rehnquist, C.J., concurring); see also *Marcus*, 138 F.3d at 56, any claim by a telecommunications customer relating to the rates, terms, or conditions of tariffed services must arise under the tariff and the FCA. See *Cahnmann*, 133 F.3d at 489-90; *MFS Int'l, Inc. v. International TelCom Ltd.*, 50 F. Supp.2d 517, 520-21 (E.D. Va. 1999) (concluding that telecommunication customer's breach of contract claims, to the extent that they survived preemption, arose under the FCA). WorldCom thus argues that because plaintiffs' claims concern the rates, terms, and conditions of tariffed services, they necessarily arise under federal law and were properly removed, even though plaintiffs presented their claims solely in terms of state law. See WorldCom's Mem. in Opp'n to Pls.' Mot. for Remand (Doc. #13) at 6-9.

WorldCom's argument runs into a significant obstacle, however, in the form of the "well-pleaded complaint rule." This rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)); see also Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987); Danca v. Private Health Care Sys, Inc., 185 F.3d 1, 4 (1st Cir. 1999). Under the well-pleaded complaint rule, a plaintiff is the master of his or her claim and may elect to maintain an action in state court by relying exclusively on state law causes of action. See Caterpillar, 482 U.S. at 392, 398-99; Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 22 (1983); Danca, 185 F.3d at 4. In other words, if a plaintiff "can maintain his claim on both state and federal grounds, he may ignore the federal question and assert only a state law claim and defeat removal." Financial Planning Inst., Inc. v. American Tel. and Tel. Co., 788 F. Supp.

75, 76 (D. Mass. 1992) (quoting <u>Redwood Theatres, Inc. v.</u> <u>Festival Enters., Inc.</u>, 908 F.2d 477, 479 (9th Cir. 1990)) (internal quotation marks omitted).

WorldCom seeks to surmount the obstacle posed by the well-pleaded complaint rule by invoking the artful pleading doctrine. As a corollary to the well-pleaded complaint rule, the artful pleading doctrine provides that a plaintiff may not avoid federal question jurisdiction (and thereby defeat removal) by omitting to plead necessary federal questions in its complaint. <u>See</u> <u>Franchise Tax Bd.</u>, 463 U.S. at 22. To prevent such artful pleading, a federal court may look beneath the face of the complaint and treat a disguised claim as one arising under federal law, notwithstanding the plaintiff's characterization of the claim in terms of state law. <u>See</u> <u>Federated Dep't Stores,</u> <u>Inc. v. Moitie</u>, 452 U.S. 394, 397 n.2 (1981); <u>BIW Deceived v.</u> <u>Local S6, Indus. Union of Marine and Shipbuilding Workers</u>, 132 F.3d 824, 831 (1st Cir. 1997).

One situation in a which a court may apply the artful

pleading doctrine to justify removal is when the plaintiff's claim is subject to complete preemption. See Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998) ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim."); BIW Deceived, 132 F.3d at 832 ("[W]e conclude that the artful pleading doctrine permits a district court to recharacterize a putative state-law claim as a federal claim when review of the complaint . . . reveals a colorable federal question within a field in which the state law is completely preempted."). In devising the complete preemption doctrine, the Supreme Court recognized that certain discrete areas of regulation have been so thoroughly federalized by Congress that any civil complaint raising claims in those areas necessarily arises under federal law and is therefore removable to federal court. See Caterpillar, 482 U.S. at 393; Metropolitan Life, 481 U.S. at 63-64; Danca, 185 F.3d at 4.

The jurisdictional doctrine of complete preemption is sometimes confused with the federal defense of preemption, also

known as ordinary preemption.  Ordinary preemption, however, is a

defense to a plaintiff's state law claims and as such is not a

sufficient basis for removal jurisdiction.  See Caterpillar, 482

U.S. at 393 ("[I]t is now settled law that a case may not be

removed to federal court on the basis of a federal defense,

including the defense of preemption . . . .") (citing Franchise

Tax Bd., 463 U.S. at 12); Metropolitan Life, 481 U.S. at 63 ("As

a defense, [ordinary preemption] does not appear on the face of a

well-pleaded complaint, and, therefore, does not authorize

removal to federal court."); Danca, 185 F.3d at 4-5, 7 (noting

distinction between complete preemption and the federal defense

of preemption in ERISA context).  As the Eleventh Circuit has

recently explained:

> The inclusion of the term "preemption" within the
> doctrine's label, while not inaccurate, has enkindled
> a substantial amount of confusion between the complete
> preemption doctrine and the broader and more familiar
> doctrine of ordinary preemption.  Stated simply,
> complete preemption functions as a narrowly drawn means
> of assessing federal removal jurisdiction, while
> ordinary preemption operates to dismiss state claims
> on the merits and may be invoked in either federal
> or state court.

-10-

BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 854-55 (11th Cir. 1999).

The Supreme Court has narrowly interpreted the scope of the complete preemption doctrine.  To date, the Court has found such extraordinary preemptive force in only two federal statutes: the Labor Management Relations Act (LMRA) and the Employment Retirement and Insurance Security Act (ERISA).  See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560-62 (1968) (developing complete preemption doctrine under LMRA § 301); Metropolitan Life, 481 U.S. at 64-67 (extending Avco rule to claim within the scope of ERISA § 502); BLAB T.V., 182 F.3d at 855-56 & n.2 (noting limited application of complete preemption doctrine); Marcus, 138 F.3d at 54 (same).

The Court's decision in Metropolitan Life to extend the application of the complete preemption doctrine from claims that require interpretation of a collective bargaining agreement to claims seeking to enforce certain rights or benefits under ERISA depended in part upon the similarity between the language

contained in § 301(a) of the LMRA and that contained in § 502(f) of ERISA.  See Metropolitan Life, 481 U.S. at 65-66 (citing 29 U.S.C. § 185(a) (1994); 29 U.S.C. § 1132(f) (1994)).  The decision in Metropolitan Life also rested on the legislative history of ERISA.  According to the Court, that history, which included express reference to § 301 of the LMRA, demonstrated that Congress "clearly manifested an intent" to make certain civil enforcement suits under ERISA removable to federal court. See id. at 66.  In his concurring opinion, Justice Brennan emphasized that any decision to extend the complete preemption doctrine required a clear manifestation of Congressional intent. See id. at 67-68 (Brennan, J., concurring).  Justice Brennan cautioned that "[i]n future cases involving other statutes, the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court."[5]  Id. at 68 (Brennan, J.,

---

[5]  Writing for the court in an earlier opinion, Justice Brennan suggested that a claim ostensibly based solely on state law nevertheless arises under federal law if "it appears that some substantial, disputed question of federal law is a necessary

concurring).

Following <u>Metropolitan Life</u>, the appropriate inquiry in evaluating WorldCom's complete preemption claim is whether Congress, in enacting the FCA, demonstrated a clear intention to create removal jurisdiction over claims such as those brought by plaintiffs. WorldCom has not pointed to any indication of such

element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." <u>Franchise Tax Bd.</u>, 463 U.S. at 13. If this dictum were construed broadly, it would authorize a non-diverse defendant to remove a state law claim whenever Congress has provided a federal remedy and preempted state law remedies in the field covered by the federal remedy. I reject this expansive reading of the <u>Franchise Tax Board</u> dictum because I cannot reconcile it with the Court's more cautious approach in <u>Metropolitan Life</u>. Moreover, it is difficult to discern a principled basis for adhering to the general rule that a preemption defense ordinarily does not provide a basis for removal while allowing removal if Congress has supplanted state law claims with a federal remedy. As long as state court plaintiffs remain free to test the validity of their state law claims against a preemption defense in state court, I see no reason why similarly situated plaintiffs should be denied the right to test the validity of their claims in state court simply because Congress has chosen to replace preempted state law claims with a right to relief under federal law. Accordingly, I decline to construe the <u>Franchise Tax Board</u> dictum to authorize the removal of claims that purport to be based exclusively on state law, absent some explicit evidence that Congress intended to authorize the removal of such claims.

-13-

an intention in the language or history of the FCA. Thus, I agree with the large number of courts that have concluded that the FCA does not have the extraordinary preemptive force required for complete preemption. See, e.g., Aronson v. Sprint Spectrum, L.P., 90 F. Supp.2d 662, 665, 667-69 (W.D. Pa. 2000); Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc., 958 F. Supp. 947, 952-54, 958 (D. Del. 1997); Bauchelle v. AT&T Corp., 989 F. Supp. 636, 643-44, 646, 648-49 (D.N.J. 1997); DeCastro v. AWACS, Inc., 935 F. Supp. 541, 549, 551, 552-53, 555 (D.N.J. 1996); Castellanos v. U.S. Long Distance Corp., 928 F. Supp. 753, 755-56 (N.D. Ill. 1996); Weinberg v. Sprint Corp., 165 F.R.D. 431, 437, 439-40 (D.N.J. 1996), appeal dismissed by NO. CIV. A. 96-354, 1996 WL 63501 (D.N.J. May 23, 1996); Esquivel v. Southwestern Bell Mobile Sys., Inc., 920 F. Supp. 713, 715-16 (S.D. Tex. 1996); Heichman v. American Tel. and Tel. Co., 943 F. Supp. 1212, 1219-22 (C.D. Cal. 1995); KVHP TV Partners, Ltd. v. Channel 12 of Beaumont, Inc., 874 F. Supp. 756, 760-62 (E.D. Tex. 1995); Financial Planning Inst., 788 F. Supp. at 76-77; American Inmate

-14-

Phone Sys., Inc. v. US Sprint Communications Co. Ltd.
Partnership, 787 F. Supp. 852, 856-59 (N.D. Ill. 1992).

WorldCom suggests that the comprehensive nature of the regulatory scheme created under the FCA supports its contention that the FCA completely preempts plaintiffs' claims. See WorldCom's Mem. in Opp'n to Pls.' Mot. for Remand (Doc. #13) at 2, 6-10. While I agree that the FCA was conceived as a comprehensive regulatory measure, see United States v. Southwestern Cable Co., 392 U.S. 157, 168 (1968); Benanti v. United States, 355 U.S. 96, 104 (1957), WorldCom's attempt to equate comprehensiveness with complete preemption is unavailing. As the Supreme Court has explained, assertions that a federal regulatory scheme is comprehensive are not particularly helpful to ordinary preemption analysis. See Hillsborough County, Florida v. Automated Med. Labs., Inc., 471 U.S. 707, 717 (1985) ("To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will

-15-

be exclusive. Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence."); Head v. New Mexico Bd. of Examiners in Optometry, 374 U.S. 424, 429-30 (1963) (stating that the validity of a preemption claim "cannot be judged by reference to broad statements about the 'comprehensive' nature of federal regulation under the [FCA]"). For similar reasons, such assertions are also of limited value in determining whether Congress intended to authorize removal of claims that appear on their face to be based on state law.

WorldCom also cites a number of decisions, none of which are binding on this court, to support of its complete preemption argument. See WorldCom's Mem. in Opp'n to Pls.' Mot. for Remand (Doc. #13) at 10-11 (citing Bastien v. AT&T Wireless Servs., Inc., 205 F.3d 983 (7th Cir. 2000); Cahnmann v. Sprint Corp., 133 F.3d 484 (7th Cir.), cert. denied, 524 U.S. 952 (1998); Marcus v. AT&T Corp., 138 F.3d 46, 55-56 (2d Cir. 1998); World Access USA Corp. v. AT&T Corp., No. 99-1864, 2000 WL 297845 (S.D. Fla. Feb.

2, 2000); Mellman v. Sprint Communications Co., 975 F. Supp. 1458

(N.D. Fla. 1996); In re Comcast Cellular Telecommunications Lit.,

949 F. Supp. 1193 (E.D. Pa. 1996); Thermalcraft, Inc. v. US

Sprint Communications Co. Ltd. Partnership, 779 F. Supp. 1039

(W.D. Mo. 1991)).  To the extent that these cases support the

proposition that the FCA completely preempts state law claims

such as those at issue in the present case,[6] I find them

impossible to reconcile with the Supreme Court's restrictive

interpretation of the complete preemption doctrine.

Two of the opinions cited by WorldCom merit extended

_____

[6] Several of the decisions cited by WorldCom are simply inapposite.  The holding in Bastien v. AT&T Wireless Services, Inc., 205 F.3d 983 (7th Cir. 2000), depended in large part upon the express preemptive language in 47 U.S.C. § 332(c)(3), a provision that governs mobile or wireless communications services (e.g., cellular telephone services).  See id. at 986-87; 47 U.S.C.A. § 332(c)(3) (West 1999).  Because the interstate telephone services at issue in the present case do not fall within the scope of § 332, I cannot look to that section for evidence that Congress intended to create removal jurisdiction over plaintiffs' claims.  In re Comcast Cellular Telecommunications Litigation, 949 F. Supp. 1193 (E.D. Penn. 1996), depends in part on § 332, see id. at 1197-98, 1201-02, 1203-04, and is therefore inapposite for the same reason as Bastien.

-17-

discussion. In <u>Cahnmann v. Sprint Corp.</u>, customers brought a class action against Sprint, a communications carrier, alleging breach of contract and fraud. <u>See</u> 133 F.3d at 486, 490. The customers originally sued in state court and Sprint removed the action to federal court. <u>See</u> <u>id.</u> at 486. The Seventh Circuit affirmed the district court's ruling that removal was proper because the customers' claims were exclusively controlled by federal law. <u>See</u> <u>id.</u> at 486, 488-91.

<u>Cahnmann</u> is unpersuasive on this point because it makes insufficient allowance for the Supreme Court's narrow view of the applicability of the complete preemption doctrine. While the <u>Cahnmann</u> court cites <u>Metropolitan Life</u> and <u>Franchise Tax Board</u>, <u>see</u> <u>id.</u> at 489, it does not engage in any discussion of these opinions and provides no compelling explanation for its decision to find complete preemption under the FCA without the required evidence of a Congressional intention to authorize removal. Simply put, nowhere in <u>Cahnmann</u> do I find an identification of the clear manifestation of Congressional intent that is required

to create removal jurisdiction under the Supreme Court's complete preemption cases.

Both WorldCom and plaintiffs cite the Second Circuit's decision in Marcus v. AT&T Corp. to support their respective positions. Marcus consolidated two separate class actions, both of which involved customers suing AT&T based on allegedly deceptive billing practices. See 138 F.3d at 51. One group of plaintiffs -- "the Marcus appellants" -- filed their action in state court, alleging deceptive acts and practices in violation of New York law, false advertising in violation of New York law, fraud and deceit, negligent misrepresentation, breach of warranty, and unjust enrichment. See id. AT&T removed the Marcus action to federal court, and the Marcus appellants moved to remand. See id. at 52. The district court denied the motion. See id.

The Second Circuit held that the Marcus appellants' claims were not completely preempted by the FCA and thus did not arise under federal law. See id. at 54-55. In reaching this

conclusion, the court relied heavily on the Supreme Court's opinion in Metropolitan Life. See id. The Second Circuit expressly disagreed with the Cahnmann court's broad conclusion that the FCA completely preempts all state law claims relating to a carrier's rates or billing practices. See id. at 55; Fax Telecommunicaciones Inc. v. AT&T, 138 F.3d 479, 486 (2d Cir. 1998). I am in agreement with this part of the Marcus court's reasoning.

Notwithstanding its rejection of Cahnmann's complete preemption analysis, however, the Second Circuit concluded that the Marcus appellants' breach of warranty claim was artfully pleaded and thus had been properly removed. See Marcus, 138 F.3d at 55-56. I find this part of the Marcus opinion to be unpersuasive. Broad application of the Marcus court's approach, under which the artful pleading doctrine is used as a surrogate for complete preemption when complete preemption does not apply, would render meaningless the Supreme Court's narrow interpretation of the complete preemption doctrine in

-20-

Metropolitan Life.  While the precise scope of the artful

pleading doctrine may be unclear,[7] the doctrine cannot be used to

circumvent the well-established rule that a preemption defense,

such as the filed rate argument mounted by WorldCom here, does

not justify removal.  See Caterpillar, 482 U.S. at 393 (citing

Franchise Tax Bd., 463 U.S. at 12); Metropolitan Life, 481 U.S.

at 63.


## III.

The Supreme Court's opinion in Metropolitan Life stands for

the proposition that the doctrine of complete preemption applies

only when Congress clearly manifests an intention to create

removal jurisdiction over certain causes of action.  See 481 U.S.

at 65-67.  WorldCom has failed to demonstrate that the FCA

contains, in either its language or its legislative history, any

---

[7]  See Arthur R. Miller, Artful Pleading: A Doctrine in Search of Definition, 76 Tex. L. Rev. 1781, 1785-86 n.14 (1998) (maintaining that the "Supreme Court has not articulated sufficiently clear principles to guide lower courts in applying" the artful pleading doctrine).

such manifestation of Congressional intent. WorldCom has similarly failed to demonstrate that absent complete preemption under the FCA, the artful pleading doctrine provides any basis for federal subject matter jurisdiction over plaintiffs' claims. Accordingly, I grant plaintiffs' motion for remand (Doc. #8) with the following caveat: because WorldCom had a good faith basis for seeking removal, given the complexity of the law in this area, I deny plaintiff's request that I exercise my discretion under 28 U.S.C. § 1447(c) to require WorldCom to bear the costs and attorney's fees incurred by plaintiffs as a result of the removal. See Heichman, 943 F. Supp. at 1222; American Inmate Phone Sys., 787 F. Supp. at 859; Boyle v. MTV Networks, Inc., 766 F. Supp. 809, 817 (N.D. Cal. 1991) (all rejecting such requests). Finally, because I grant plaintiffs' motion for remand, WorldCom's motion to dismiss (Doc. #11) and the ILD defendants' motion to dismiss (Doc. #12) are denied as moot.

SO ORDERED.

_____

                                        Paul Barbadoro
                                        Chief Judge

July 27, 2000

cc:   Kenneth Bouchard, Esq.
      James Bassett, Esq.
      Adam Charnes, Esq.
      Garry Lane, Esq.
      Gregory Harley, Esq.