**CELLULAR TELECOMMUNICATIONS INDUSTRY ASSOCIATION, et al.,**
**Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**Southwestern Bell Telephone Company, et al., Intervenors.**

**Nos. 97–1690, 97–1703 and 97–1705.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 8, 1999.

Decided March 16, 1999.

Theodore C. Whitehouse argued the cause for petitioners... With him on the briefs were David M. Don, Michael F. Altschul, and David A. Gross. Robert A. Long, Jr., entered an appearance.

James M. Carr, Counsel, Federal Communications Commission, argued the cause for respondent. With him on the brief were Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, Catherine G. O'Sullivan and Nancy C. Garrison, Attorneys, Christopher J. Wright, General Counsel, Federal Communications Commission, and Daniel M. Armstrong, Associate General Counsel. John E. Ingle, Deputy Associate General Counsel, entered an appearance.

Michael D. Hays, Laura H. Phillips, Raymond G. Bender, Jr., J. G. Harrington, Robert L. Hoggarth, Caressa D. Bennet, and Gregory W. Whiteaker were on the briefs for intervenors Comcast Cellular Communications, Inc., et al. Ray M. Senkowski entered an appearance.

James D. Ellis, Robert M. Lynch, Durward D. Dupre, Michael Zpevak, Robert B. McKenna, William B. Barfield, and M. Robert Sutherland were on the brief for intervenors Southwestern Bell Telephone Company, et al. Jim O. Llewellyn entered an appearance.

Before: SILBERMAN, SENTELLE, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Federal law bars states from regulating the entry of, and the rates charged by, providers of mobile telecommunications services. Texas law requires all providers of telecommunications services in the state to contribute to two state-administered funds. In these consolidated petitions for judicial review of an order of the Federal Communications Commission, the question is whether the Commission rightly decided that the federal statute did not preempt the Texas law. See City of Abilene, Tex. v. FCC, 164 F.3d 49 (D.C.Cir.1999).

I

"Universal telephone service" denotes federal and state efforts to make communications services available to all Americans at affordable rates. *See* 47 U.S.C. §§ 151, 254(b). In the past, universal service had been "achieved largely through implicit subsidies.... designed to shift costs from rural to urban areas, from residential to business customers, and from local to long distance service." *Federal–State Joint Bd. on Universal Serv., Report & Order,* 12 F.C.C.R. 8776, 8784 (1997).

In 1995, Texas enacted a statute requiring telecommunications service providers doing business in the state to contribute annually to two state-run universal service programs. *See* Texas Public Utility Regulatory Act of 1995, §§ 3.606, 3.608 (codified at TEX. UTIL. CODE ANN. §§ 56.021–.022, 57.043–.046 (West 1998)) ("Texas Utility Act"). Section 3.606 of the Texas Utility Act requires contributions to the Telecommunications Infrastructure Fund. This fund awards grants and loans to finance computer equipment and networks at schools, libraries, and medical facilities. See TEX. UTIL.CODE ANN. §§ 57.043–.046. Section 3.608 of the Texas Utility Act establishes the Universal Service Fund to subsidize certain telecommunications services in the state's high-cost rural areas, and to provide service to low-income disabled persons, and persons with hearing and speech impairments. *See id.* §§ 56.021, 56.072, 56.102. It is to be "funded by a statewide uniform charge payable by each telecommunications provider that has access to the customer base." *See id.* § 56.022.

Pittencrieff Communications, Inc., a provider of commercial mobile ("wireless") services in Texas, petitioned the Federal Communications Commission for a declaratory ruling that a provision in the Communications Act of 1934, as amended by the Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, 107 Stat. 312, 392, preempted the Texas law. The federal provision—§ 332(c)(3)(A)—is as follows (for ease of reference we, have numbered the first three sentences):

[1] Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services. [2] Nothing in this subparagraph shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a State commission on all providers of telecommunications services necessary to ensure the universal availability of telecommunications service at affordable rates. [3] Notwithstanding the first sentence of this subparagraph, a State may petition the Commission for authority to regulate the rates for any commercial mobile service and the Commission shall grant such petition if such State demonstrates that—

(i) market conditions with respect to such services fail to protect subscribers adequately from unjust and unreasonable rates or rates that are unjustly or unreasonably discriminatory; or

(ii) such market conditions exist and such service is a replacement for land line telephone exchange service for a substantial portion of the telephone land line exchange service within such State.

The Commission shall provide reasonable opportunity for public comment in response to such petition, and shall, within 9 months after the date of its submission, grant or deny such petition. If the Commission grants such petition, the Commission shall authorize the State to exercise under State law such authority over rates, for such periods of time, as the Commission deems necessary to ensure that such rates are just and reasonable and not unjustly or unreasonably discriminatory.

47 U.S.C. § 332(c)(3)(A). After notice and comment, the Commission denied the petition on the ground that the state's contribution requirements do not constitute rate or entry regulation of wireless services, the sort of regulation § 332(c)(3)(A) preempts. *See In re: Pittencrieff Communications, Inc.,* 13

F.C.C.R. 1735, 1737 (1997). In the Commission's view, the Texas law fell within the "other terms and conditions" language of the first sentence of § 332(c)(3)(A) and thus was within the state's lawful authority. *See* 13 F.C.C.R. at 1737. The Commission also reasoned that to interpret § 332(c)(3)(A) otherwise would contradict 47 U.S.C. § 254(f), which permits a state to require universal service contributions from every telecommunications carrier providing intrastate telecommunications services in the state. *See* 13 F.C.C.R. at 1737. The denial of Pittencrieff's petition affirmed an earlier Commission ruling that § 332(c)(3)(A) did not preclude states from requiring commercial mobile service providers to contribute to state universal service support mechanisms. *See* 12 F.C.C.R. at 9181–82.

Two other commercial mobile radio service providers, AirTouch Communications, Inc. and Sprint Spectrum, L.P., and their trade group, Cellular Telecommunications Industry Association (collectively "Cellular"), petitioned for judicial review. Other parties intervened for and against Cellular's position.

## II

Cellular believes the case turns on the second sentence of § 332(c)(3)(A)— "Nothing in this subparagraph shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a State commission on all providers of telecommunications services necessary to ensure the universal availability of telecommunications service at affordable rates." As Cellular reads it, the second sentence means this: a state may require contributions to a universal service fund if, and only if, wireless service is "a substitute for land line telephone exchange service for a substantial portion of the communications within such State"—a condition, we assume, not satisfied here.

Cellular's reading is plausible, but not cogent. Or so the Commission tells us. For starters, the Commission says that one must view the second sentence in the context of the rest of § 332(c)(3)(A). That of course is the correct approach. The first sentence, we are told, sets out the basic framework: a state may not regulate "the entry of or the rates charged by," but it may regulate "other terms and conditions" of wireless services. Here too the Commission is on solid ground. The Commission then tells us that the second and third sentences comprise exceptions to the first sentence's ban on state regulation. So far there can be no quarrel. From this, the Commission concludes that the second sentence allows a state to promote universal service by regulating rates if wireless services are a substitute for land line telephone exchange service for a substantial portion of the communications within such state, something the first sentence would otherwise bar the state from doing. There may be some room for questioning the proposition,[1] but the important point is that the second sentence does not, by its terms, preempt anything. All the preempting is done in the first sentence; the second and third sentence contain exceptions.

One might say the second sentence, with its exception for universal service, sheds light on the meaning of the first sentence's distinction between rate and entry regulation, on the one hand, and other terms and conditions. We will say more about this shortly. For now, we deal with Cellular's basic position that the second sentence itself preempts the Texas statute. That cannot be right. No matter how long one stares at the second sentence, no matter how one turns it against the light, the sentence only contains the language of exception. The second sentence does not preempt and it does not forbid. Just the opposite. It limits the circumstances in which a state law must give way to federal law.

---

1. Cellular argues that the Commission's reading of the second sentence renders the third sentence redundant. According to Cellular, the third sentence alone provides the narrow exceptions to the first sentence's ban on state rate regulation. Cellular's interpretation is permissible, but so is that of the Commission, which construes the second and third sentences as establishing different conditions for exempting different types of state rate regulation from the preemption outlined in the first sentence.

This brings us to an argument Cellular deposited in a footnote: "Even if this Court concludes that intrastate universal service contributions are not preempted by the second sentence of section 332(c)"—and we have just concluded they are not—"the first sentence also serves as a barrier to state contribution requirements." Petitioners' Brief at 24–25 n.13. Here the idea is that the Texas contribution requirements are impermissible rate regulation because they increase the wireless service provider's costs of doing business in the state and thus impact the rates charged to customers. One might say the same about local siting laws or state consumer protection laws. They too increase the cost of doing business. Yet a House Committee cited these laws as examples of the variety of *permissible* regulation of the "other terms and conditions." *See* H.R.REP. No. 103–111, at 261 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 588. The Commission offered other such examples, including some drawn from its previous decisions. To equate state action that may increase the cost of doing business with rate regulation would, the Commission reasonably concluded, forbid nearly all forms of state regulation, a result at odds with the "other terms and conditions" portion of the first sentence.

As we have mentioned, a better point might be that the exception for universal service in the second sentence sheds light on the meaning of the first sentence; in other words, the second sentence assumes that a state requiring contributions to universal service funds is a state regulating rates. Cellular did not, so far as we can tell, make this argument in its briefs, although its counsel mentioned the point in oral argument. For its part, the Commission interprets the "rates charged by" language in the first sentence of § 332(c)(3)(A) to "prohibit states from prescribing, setting or fixing rates" of wireless service providers, none of which the Texas law accomplishes. 13

F.C.C.R. at 1745. On this view, the second sentence represents an exception for state laws that frame their universal service requirement in terms of a regulation of rates and meet the specified condition. The Commission has reached this position not only in light of § 332(c)(3)(A), but also because of 47 U.S.C. § 254, added by the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56. Section 254(f) provides: "A State may adopt regulations not inconsistent with the Commission's rules to preserve and advance universal service. Every telecommunications carrier that provides intrastate telecommunications services shall contribute, on an equitable and nondiscriminatory basis, in a manner determined by the State to the preservation and advancement of universal service in that State." 47 U.S.C. § 254(f). This is strong support for the proposition that, consistent with federal law, states may require contributions of the sort Texas is exacting.[2] Instead of preempting such laws, Congress endorsed them. Cellular's only response is that "the specific language in section 332(c)(3)(A) operates to limit the general grant of authority given in section 254(f)." This assumes § 254(f) is the general provision while § 332(c)(3)(A) is the specific. If anything, it seems to us the other way around. One provision does not, in any event, control the other, as the Commission has interpreted them. Rather than being in conflict, the provisions are in harmony.

The bottom line is that Cellular has not demonstrated that its interpretation of § 332(c)(3)(A) is the only permissible one or that the Texas universal service laws were rate or entry regulation. Section 332(c)(3)(A) leaves its key terms undefined. It never states what constitutes rate and entry regulation or what comprises other terms and conditions of wireless services. *See Grand Canyon Air Tour Coalition v. FAA*, 154 F.3d 455, 466 (D.C.Cir.1998). The Commission's interpretation of § 332(c)(3)(A)

---

2. Intervenors supporting Cellular contend that wireless services are "jurisdictionally" interstate and thus fall outside § 254(f), and its endorsement of imposing state universal service regulations on providers of "intrastate" telecommunications services. We do not reach the merits of this claim because it was not raised in a timely

or proper manner. *See* 47 U.S.C. § 405; *see also Freeman Eng'g Assocs., Inc. v. FCC*, 103 F.3d 169, 182–85 (D.C.Cir.1997); *Time Warner Entertainment Co. v. FCC*, 56 F.3d 151, 202–03 (D.C.Cir.1995); *Illinois Bell Tel. Co. v. FCC*, 911 F.2d 776, 786 (D.C.Cir.1990).

gives meaning to each sentence, *see Illinois Public Telecommunications Ass'n v. FCC*, 117 F.3d 555, 562 (D.C.Cir.1997), fairly reflects the statute's purpose to limit state rate and entry but not universal service regulation, *see Bell Atlantic Telephone Cos. v. FCC*, 131 F.3d 1044, 1047–49 (D.C.Cir.1997), and harmonizes § 332(c)(3)(A) and § 254(f), *see Louisiana Public Service Commission v. FCC*, 476 U.S. 355, 370, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). There is thus no basis for setting aside the Commission's decision. *See* 5 U.S.C. § 706(2)(A).

The remaining contentions of Cellular and the Intervenors supporting it have been considered and rejected.

*The petitions for review are denied.*