[No. C031783. Third Dist. June 8, 2000.]

SUSANNE BALL et al., Plaintiffs and Appellants, v.
GTE MOBILNET OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Franklin & Franklin, J. David Franklin; Law Offices of Anthony A. Ferrigno, Anthony A. Ferrigno; Whitmer & Law and James Whitmer for Plaintiffs and Appellants.

Farella, Braun & Martel, Douglas R. Young, Robert C. Holtzapple, Grace K. Won; Alston & Bird, Peter Kontio and Michael P. Kenny for Defendants and Respondents Fresno MSA Limited Partnership, GTE Mobilnet of California Limited Partnership, GTE Mobilnet, Inc., and GTE Mobilnet of Santa Barbara Limited Partnership.

Gibson, Dunn & Crutcher, Joel Steven Sanders, Steven S. Kimball and Mark A. Perry for Defendant and Respondent Los Angeles Cellular Telephone Company.

Pillsbury, Madison & Sutro, Mary B. Cranston, Kevin M. Fong, D. Kirk Jamieson and John S. Poulos for Defendants and Respondents AirTouch Communications, Inc., Airtouch Cellular, Los Angeles SMSA Limited Partnership and Sacramento Valley Limited Partnership.

Watson, Khachadourian, Re & Kraft, Kevin R. Iams; Stokes Lawrence, Laura J. Buckland and Heather C. Francks for Defendants and Respondents AT&T Wireless Services, Inc., Stockton Cellular Telephone Company, Sacramento Cellular Telephone Company, Redding Cellular Partnership, Fresno Cellular Telephone Company, Santa Barbara Cellular Telephone and Ventura Cellular Telephone Company.

Gray, Cary, Ware & Freidenrich, William N. Kammer, Daniel T. Pascucci and Mary A. Lehman for Defendants and Respondents Cox Communications PCS L.P. and Sprint Spectrum L.P.

Pacific Telesis Group Legal Department and Bart Kimball for Defendant and Respondent Pacific Bell Mobile Services.

Stevens & O'Connell, Charles J. Stevens, Stephen J. Burns and Bradley A. Benbrook for Defendant and Respondent Bakersfield Cellular Telephone Company.

Keker & Van Nest, Steven A. Hirsch and Loretta Lynch for Defendants and Respondents Bay Area Cellular Telephone Company, Cagal Cellular Communications Corporation, Napa Cellular Telephone Company and Salinas Cellular Telephone Company.

## OPINION

**DAVIS, J.**—Recognizing the rapid growth of the cellular phone industry and related wireless communication methods (termed commercial mobile radio services (CMRS), or commercial mobile services), the United States Congress in 1993 amended the Communications Act of 1934. (47 U.S.C. § 151 et seq. as amended by the Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103-66, § 6002 (Aug. 10, 1993) 107 Stat. 312, 387-397; see *In re Comcast Cellular Telecom. Litigation* (E.D.Pa. 1996) 949 F.Supp. 1193, 1197 (*Comcast Cellular*).) Pursuant to its stated goals of deregulating CMRS while providing a basic federal regulatory framework, Congress amended section 332 of the Communications Act to provide: "[N]o State or local government shall have any authority to regulate the entry of or *the rates charged* by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating *the other terms and conditions* of commercial mobile services." (47 U.S.C. § 332(c)(3)(A), italics added (hereafter, section 332(c)(3)(A)); see *Comcast Cellular, supra,* 949 F.Supp. at p. 1197.)

Plaintiffs here have sued every major provider and owner of cellular phone services and related wireless personal communication services in California (for simplicity, we will refer to these entities and services specifically as defendants and generically as cellular providers or cellular services). Basically, plaintiffs object to having to pay for noncommunication time when using these services (essentially, nontalking time, including time rounded up to the next full minute); they ground their objection in California's law on unfair and unlawful business practices. (Bus. & Prof. Code, § 17200 et seq.) The trial court sustained defendants' demurrer without leave to amend and entered a judgment of dismissal, concluding that section 332(c)(3)(A) preempted these state law claims.

We conclude that plaintiffs cannot invoke state law to complain of having to pay noncommunication time after August 7, 1995; this is because section 332(c)(3)(A)'s preemptive force became effective in California on August 8, 1995, and such a complaint would involve the state in regulating "the rates charged." However, plaintiffs can invoke state law to complain that such charges, before and after August 8, 1995, were not disclosed; this is because such disclosure is a "term and condition" over which the state can exercise its laws. Plaintiffs can also claim that defendants violated their pre-August 8, 1995 tariffs on file with the California Public Utilities Commission (PUC). Accordingly, we reverse the judgment of dismissal.

### BACKGROUND

Before 1993, the regulation of cellular services was divided between federal and state authorities, largely along an interstate/intrastate line. (See

former 47 U.S.C. § 152(b); 47 U.S.C. § 201; Kennedy & Purcell, *Section 332 of the Communications Act of 1934: A Federal Regulatory Framework That Is "Hog Tight, Horse High, and Bull Strong"* (1998) 50 Fed. Comm. L.J. 547, 555-561 (hereafter, Kennedy and Purcell, Section 332, 50 Fed. Comm. L.J.). For example, the PUC had the power to review certain cellular rates that were filed with it in a tariff, under a "just and reasonable" standard. (See, e.g., Pub. Util. Code, § 728.)

By enacting section 332(c)(3)(A) in 1993, Congress "dramatically re-vise[d] the regulation of the wireless telecommunications industry, of which cellular telephone service is a part." (*Conn. Dept. of Public Utility Cont. v. F.C.C.* (2d Cir. 1996) 78 F.3d 842, 845; see Kennedy & Purcell, section 332, 50 Fed. Comm. L.J., *supra*, at pp. 555-565.) "To foster the growth and development of mobile services [i.e., cellular and related mobile wireless communications] that, by their nature, operate without regard to state lines as an integral part of the national telecommunications infrastructure, new section 332(c)(3)(A) . . . preempt[s] state rate and entry regulation of all commercial mobile services," but permits state regulation of "other terms and conditions." (H.R.Rep. No. 103-111, 1st Sess., p. 260, reprinted in 1993 U.S. Code Cong. & Admin. News, pp. 378, 587; 47 U.S.C. § 332.) These "other terms and conditions," notes this House Report, include "such matters as customer billing information and practices and billing disputes and other consumer protection matters; facilities siting issues (*e.g.*, zoning); transfers of control; the bundling of services and equipment; and the requirement that carriers make capacity available on a wholesale basis or such other matters as fall within a state's lawful authority." (H.R.Rep. No. 103-111, *supra*, 1993 U.S. Code Cong. & Admin. News, p. 588; see also *Tenore v. AT&T Wireless Services* (1998) 136 Wash.2d 322 [962 P.2d 104, 111] (*Tenore*); *GTE Mobilnet of Ohio v. Johnson* (6th Cir. 1997) 111 F.3d 469, 477-478.)

The trial court sustained defendants' demurrer without leave to amend "on the ground the Federal Communications Act [(§ 332(c)(3)(A))] preempts all state regulatory authority over wireless service rates."[1]

DISCUSSION

1.  *Standard of Review*

 A general demurrer challenges only the legal sufficiency of the complaint, not the truth or the accuracy of its factual allegations or the

---

[1]All defendants joined in the demurrer filed by the Los Angeles Cellular Telephone Company (Los Angeles Cellular). This demurrer was based solely on the ground of section 332(c)(3)(A) preemption. Los Angeles Cellular was not named as a defendant in plaintiffs' fifth and sixth causes of action. The defendants named in those counts filed a separate demurrer that expressly adopted Los Angeles Cellular's arguments in support of its demurrer.

plaintiff's ability to prove those allegations. (*Amarel v. Connell* (1988) 202 Cal.App.3d 137, 140 [248 Cal.Rptr. 276].) When a demurrer is sustained without leave to amend, we determine whether there is a reasonable possibility that a cause of action can be stated: if it can be, we reverse; if not, we affirm. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

■ A demurrer is an appropriate vehicle to secure a dismissal of a state law action based on federal law preemption. (See *Smiley v. Citibank* (1995) 11 Cal.4th 138, 164 [44 Cal.Rptr.2d 441, 900 P.2d 690]; *Sanderson, Thompson, Ratledge & Zimny v. AWACS* (D.Del. 1997) 958 F.Supp. 947, 957 (*Sanderson*).) Federal law preemption is based on the supremacy clause of the federal Constitution, and may be demonstrated by the explicit language of a federal statute, by an actual conflict between state and federal law, or by a federal law exclusively occupying the "legislative field." (U.S. Const., art VI, cl. 2; *Smiley, supra,* at p. 147; *Sanderson, supra,* at p. 957.) The preemption alleged here is based on the explicit language of section 332(c)(3)(A).

### 2. *Plaintiffs' Challenges to Paying for Noncommunication Time*

Plaintiffs' complaint identifies five items of noncommunication time that are billed in alleged violation of Business and Professions Code section 17200's prohibition on unfair or unlawful business practices. The five are:

—charging in full-minute billing increments (what plaintiffs call "rounding up"), in which a full minute of wireless service is charged for each part of a minute used (the first cause of action alleges this is an unfair business practice; the second cause of action alleges it is an unlawful business practice);

—charging from connection to disconnection (what plaintiffs term the "send" to "end" measurement—pressing the send and end buttons starts and ends the charging; the third cause of action alleges this as an unfair business practice, the fourth cause of action as unlawful);

—charging for ringing time for completed calls, while not charging for ringing time for uncompleted calls (the fifth cause of action alleges this as an unfair business practice, the sixth cause of action as unlawful; this claim was not asserted against Los Angeles Cellular);

—charging full rates for "incomplete calls" in the Los Angeles area for "bucket plans" in violation of PUC-filed tariffs; a "bucket plan" gives a

customer a certain number of minutes of use per month; the seventh cause of action alleges this is an unlawful business practice);

—charging for the time it takes for the system to disconnect at the telephone company's facilities after a conversation is concluded (what plaintiffs term the "lag time"; the eighth cause of action alleges this as an unlawful business practice, the ninth cause of action as unfair).

In each of these causes of action, plaintiffs seek "restitution of all amounts overpaid by [them] and other members of the general public . . . as a result of the aforesaid unfair business act or practice." They also seek, in each cause of action, a permanent injunction enjoining defendants from engaging in any of these unfair or unlawful business practices.

Plaintiffs argue that these claims are subject to state law as mere "billing practices." Defendants counter that a state court, in adjudicating these claims, would have to regulate the "rates charged" by a cellular provider, something a state is explicitly prohibited from doing under section 332(c)(3)(A). Defendants have the better argument.

The court in *Comcast Cellular* faced an issue of "rates charged" very similar to the one before us, and we find its reasoning and decision on that issue persuasive.

In *Comcast Cellular*, the plaintiffs alleged that a cellular provider's practice of charging in one-minute billing increments (rounding up) and charging for the noncommunication period from the time a call is initiated until the call is answered violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law as well as the implied covenant of good faith and fair dealing, and unjustly enriched the cellular provider, Comcast. (*Comcast Cellular, supra,* 949 F.Supp. at p. 1196.) The plaintiffs in *Comcast* also alleged that Comcast inadequately disclosed these billing practices to its customers. (*Ibid.*)

The *Comcast Cellular* court concluded that the plaintiffs' claims of inadequate disclosure of these billing practices were subject to state law. (*Comcast Cellular, supra,* 949 F.Supp. at pp. 1199-1200.) But the plaintiffs' state law claims challenging the charges for noncommunication time, including the rounding-up charge, were preempted by section 332(c)(3)(A), said the *Comcast Cellular* court, because they posed "clear challenge[s] to the reasonableness of the rates charged by Comcast for cellular phone services." (949 F.Supp. at p. 1200.)

The *Comcast Cellular* court reasoned as follows. The plaintiffs alleged that the noncommunication charges violated the covenant of good faith and

fair dealing and unjustly enriched Comcast. Thus, said the court, these allegations "direct[ly]" and "clear[ly]" challenge "the reasonableness of the rates charged by Comcast . . . ." (*Comcast Cellular, supra,* 949 F.Supp. at p. 1200.)

The remedies the *Comcast Cellular* plaintiffs sought also showed they were challenging Comcast's rates and not just the failure to disclose those rates. The court noted in this regard: "Recovery of the amounts collected by [Comcast] through its alleged unlawful practices can be justified on the basis of nondisclosure. The injunctions demanded by the Plaintiffs do not, however, mandate disclosure or simply seek to enjoin [Comcast's] practice pending full disclosure. Rather, the Plaintiffs are seeking to permanently prevent Comcast from charging for the non-communication period. The request for such an injunction is nothing less than a request that the court regulate the manner in which Comcast calculates its rate schedules." (*Comcast Cellular, supra,* 949 F.Supp. at p. 1201.)

The *Comcast Cellular* court concluded: "[The Plaintiffs' claims] attack[] the reasonableness of the method by which Comcast calculates the length and, consequently, the cost of a cellular telephone call. As such, the Plaintiffs' claims present a direct challenge to the calculation of the rates charged by Comcast for cellular telephone service. The remedies they seek would require a state court to engage in regulation of the rates charged by a [cellular] provider, something [a state] is explicitly prohibited from doing [under section 332(c)(3)(A)]." (*Comcast Cellular, supra,* 949 F.Supp. at p. 1201; see *Chicago & N. W. Tr. Co. v. Kalo Brick & Tile Co.* (1981) 450 U.S. 311, 326 [101 S.Ct. 1124, 1134-1135, 67 L.Ed.2d 258, 270-271] [state court adjudication is a form of state regulation].)

*Comcast Cellular*'s reasoning, which we find persuasive, can be applied to the issue before us of charging for noncommunication time.

Plaintiffs have alleged in their complaint that charging for non-communication time is an "unfair" and "unlawful" business practice under California's unfair business practices law. (Bus. & Prof. Code, § 17200 et seq.) As in *Comcast Cellular,* this allegation "presents a clear challenge to the reasonableness of the rates charged" by defendants. (*Comcast Cellular, supra,* 949 F.Supp. at p. 1200.)

Plaintiffs here, like the plaintiffs in *Comcast Cellular,* are seeking through their request for a permanent injunction "to permanently prevent [defendants] from charging for the non-communication period." (*Comcast Cellular, supra,* 949 F.Supp. at p. 1201.) This request "is nothing less than a request that [we] regulate the manner in which [defendants] calculate[] [their] rate schedules." (*Ibid.*)

Plaintiffs' claims here, like the plaintiffs' claims in *Comcast Cellular,* attack the reasonableness of the method by which the defendants calculate

the length and, consequently, the cost of a cellular phone call. As such, plaintiffs' claims present a direct challenge to the rates charged by the defendants for cellular phone service. (*Comcast Cellular, supra,* 949 F.Supp. at p. 1201.)

Plaintiffs beg to differ with this analysis. As they argue, the total charge for airtime on a wireless network is made up of a rate component multiplied by a time component. It is obvious, they maintain, that the time component of the airtime charged has absolutely nothing to do with the rate charged.

We beg to differ. As defendants point out, this distinction between rate and time is nonsensical because the rate charged for wireless service includes both price and time. A rate for a service, like cellular phone service, that is sold based on the length of time that it is used necessarily includes a method of measuring that time, as well as a price for each unit of time used; in short, the length of time for which a customer is charged is an inseparable component of the rate. This accords with the pertinent definition of "rate": "The *cost per unit* of a commodity or service[;] A charge or payment *calculated in relation to a particular sum. or quantity . . . ."* (American Heritage Dict. (2d college ed. 1982) p. 1027, italics added.) As the United States Supreme Court has put it: "Rates . . . do not exist in isolation. They have meaning only when one knows the services to which they are attached." (*American Telephone & Telegraph Co. v. Central Office Telephone, Inc.* (1998) 524 U.S. 214, 223 [118 S.Ct. 1956, 1963, 141 L.Ed.2d 222, 233].) In the context of cellular service, the element of time can no more be divorced from rate than a clock from its hands.

Based on this reasoning, the Federal Communications Commission (FCC) has recently concluded "that the term 'rates charged' in [section 332(c)(3)(A)] may include both rate levels and rate structures for [cellular providers] and that the states are precluded from regulating either of these." (*In re Southwestern Bell Mobile Systems, Inc.* (1999) 14 F.C.C.R. 19, 898, ¶ 20.) The FCC has also stated that billing increments are a necessary component of the rates charged by cellular providers, and that under section 332(c)(3)(A), "states do not have authority to prohibit [cellular providers] from . . . charging in whole minute increments." (*In re Southwestern Bell, supra,* at ¶ 23; see also *In re Implementation of Section 6002(B) of the Omnibus Budget Reconciliation Act of 1993* (1995) 10 F.C.C.R. 8844, ¶ 70 (1st Rep.); *In re MCI Cellular Telephone Co.* (1984) 96 F.C.C.2d 1014, 1033, ¶¶ 49-51.) Finally, the FCC has interpreted the "rates charged by" language in section 332(c)(3)(A) to "prohibit states from prescribing, setting, or fixing rates" of cellular providers. (*In re Pittencrieff Communications, Inc.* (1997) 13 F.C.C.R. 1735, 1745, ¶ 20; see *Cellular Telecommunications Industry v. F.C.C.* (D.C. Cir. 1999) 168 F.3d 1332, 1336 [335 App.D.C. 32].) If states could regulate as envisioned by plaintiffs here, those states would, at the least, be prescribing rates.

Plaintiffs' challenges here to charges for noncommunication time are more directly related to "the rates charged" than the challenges found preempted under section 332(c)(3)(A) in a recent decision, *Bastien v. AT&T Wireless Services, Inc.* (7th Cir. 2000) 205 F.3d 983. In *Bastien*, the plaintiff sued a new cellular provider in state court for breach of contract and consumer fraud because a high number of his calls were cut off. (205 F.3d at p. 985.) The plaintiff basically alleged that the new cellular provider " 'signed up subscribers without first building the cellular towers and other infrastructure necessary to provide reliable cellular connections.' " (*Id.* at p. 989.) The *Bastien* court deemed the plaintiff's suit preempted by section 332(c)(3)(A) because it encompassed "the entry of [and] the rates charged by" the cellular provider. (205 F.3d at pp. 984, 989.) As for "the rates charged" preemption, *Bastien* reasoned that "a complaint that service quality is poor is really an attack on the rates charged for the service and may be treated as a federal case regardless of whether the issue was framed in terms of state law." (*Id.* at p. 988.)

This case is not akin to those decisions that have found certain cellular or related communication charges still subject to state law. (See, e.g., *Esquivel v. Southwestern Bell Mobile Systems, Inc.* (S.D.Tex. 1996) 920 F.Supp. 713 [finding a charge for early termination of cellular service to be a "term and condition" of service, not a rate, and therefore subject to state regulation]; *Com. of Ky., ex rel. Gorman v. Comcast Cable* (W.D.Ky. 1995) 881 F.Supp. 285 [finding the practice of billing customers for certain services unless they specifically decline them is still subject to state regulation]; *Cellular Telecommunications Industry v. F.C.C., supra,* 168 F.3d 1332; and *Mountain Solutions v. State Corp. Com'n of Ks* (D.Kan. 1997) 966 F.Supp. 1043 [state laws requiring cellular providers to contribute money to state-run universal service programs not preempted by § 332(c)(3)(A)].) The billing practices in these cases have only a tangential relationship to the actual rates for service paid by cellular customers. (See *Comcast Cellular, supra,* 949 F.Supp. at p. 1201.) The same cannot be said here—plaintiffs' claims directly challenge the way defendants calculate the length of a cellular phone call and thus the rates which are charged for such a call. (See *ibid.*)

Nor does the "savings clause" in the Communications Act help plaintiffs. That clause states that "[n]othing [contained] in this chapter [of which section 332(c)(3)(A) is a part] . . . shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." (47 U.S.C. § 414.) "A general 'remedies' saving clause cannot be allowed to supersede [a] specific substantive pre-emption provision"—this would render the preemption provision meaningless. (*Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 385 [112 S.Ct. 2031, 2037, 119 L.Ed.2d 157, 168].)

And despite a lot of ink spilled on the issue by plaintiffs, the interstate/ intrastate distinction is not relevant here on "the rates charged" issue. Section 332(c)(3)(A) specifies that "no State or local government shall have *any* authority to regulate . . . the rates charged by *any* commercial mobile service or *any* private mobile service . . . ." (Italics added.) In amending section 332(c)(3)(A) in 1993, Congress noted that "mobile services [i.e., cellular services] . . . , by their nature, operate without regard to state lines as an integral part of the national telecommunications infrastructure" and that section 332(c)(3)(A) "preempt[s] state rate . . . regulation of all commercial mobile services." (H.R.Rep. No. 103-111, *supra*, 1993 U.S. Code Cong. & Admin. News, p. 587; see also *In re Petition of California to Retain Regulatory Authority Over Intrastate Cellular Service Rates* (1995) 11 F.C.C.R. 796 [denying California's request to extend state regulatory authority over cellular rates—see 47 U.S.C. § 332(c)(3)(B)].)

It is true that the court in *DeCastro v. AWACS, Inc.* (D.N.J. 1996) 935 F.Supp. 541, in dealing with contentions involving billing for noncommunication time and for rounding up identical to those made in *Comcast Cellular*, stated that these contentions "challeng[e] the fairness of a billing practice, not the rates themselves." (*DeCastro, supra,* 935 F.Supp. at p. 552.) This statement, however, holds little persuasive force here. First, it was made in passing without analysis. Second, it was made in the context of considering whether section 332(c)(3)(A) "completely" preempted—rather than "ordinarily" preempted—state law, a much higher standard to satisfy. (See *DeCastro, supra,* 935 F.Supp at pp. 552, 555; *Sanderson, supra,* 958 F.Supp. at p. 957.) And third, and most significantly, *DeCastro* suggested that federal law may apply, in an ordinary preemptive way, if resolution of the plaintiffs' challenges required a court to assess the reasonableness of these billing practices. (See *DeCastro, supra,* 935 F.Supp. at pp. 550-552, 555; see also *Comcast Cellular, supra,* 949 F.Supp. at p. 1200 [citing *DeCastro* in support of its analysis].)

In the end, the gravamen of plaintiffs' complaint, as they themselves allege, is that defendants' actions have resulted "in subscribers, including plaintiffs, being *overcharged for service.*" (Italics added.) From this description, it is clear that plaintiffs challenge *the rates charged* by defendants. If the states could still regulate in the context presented by plaintiffs here, that would undermine the 1993 amendment to section 332(c)(3)(A), and that statute would not have "dramatically revise[d] the regulation of the wireless telecommunications industry." (*Conn. Dept. of Public Utility Cont. v. F.C.C., supra,* 78 F.3d at p. 845; see also Kennedy & Purcell, *Section 332, supra,* 50 Fed. Comm. L.J. at pp. 559-562.)

We conclude that section 332(c)(3)(A) preempts plaintiffs' claims to the extent that plaintiffs challenge defendants' charging for noncommunication

time, including rounding up, after August 7, 1995. August 7, 1995, is the pivotal date because on August 8, 1995, section 332(c)(3)(A) became effective in California after the FCC denied California's petition to retain regulatory authority over cellular rates. (47 U.S.C. § 332(c)(3)(B) ["If a State has in effect on June 1, 1993, any regulation concerning the rates for any [cellular provider] offered in such State on such date, such State may, no later than 1 year after August 10, 1993, petition the [FCC] requesting that the State be authorized to continue exercising authority over such rates. *If a State files such a petition [(which California did)], the State's existing regulation shall, notwithstanding [the section 332(c)(3)(A) preemption provision], remain in effect until the [FCC] completes all action (including any reconsideration) on such petition.* The [FCC] shall review such petition . . . [and] shall complete all action (including any reconsideration) within 12 months after such petition is filed . . . ." (italics added); see Historical and Statutory Notes, 47 U.S.C.A. (2000 supp.) foll. § 332, p. 199, quoting § 6002(c)(2)(A) of Pub.L. No. 103-66 (Aug. 10, 1993) [§ 332(c)(3)(A) (i.e., the preemption provision) "shall take effect 1 year after . . . date of enactment (date of enactment was Aug. 10, 1993)"]; *Los Angeles Cellular Telephone Co. v. Superior Court* (1998) 65 Cal.App.4th 1013, 1017, fn. 3 [76 Cal.Rptr.2d 894]; *In re Petition of California to Retain Regulatory Authority Over Intrastate Cellular Rates, supra,* 11 F.C.C.R. 796 (Aug. 8, 1995) [FCC order on reconsideration denying California's request to extend state regulatory authority over cellular rates].)

■ Plaintiffs note that their fifth and sixth causes of action (for discriminatory billing regarding ring time), their seventh cause of action (for overcharging for incomplete calls in violation of defendants' PUC-filed tariffs and the Public Utilities Code), and their eighth and ninth causes of action (for "lag time" disconnection charges), allege unfair and unlawful business practices that began in January 1987. We agree with plaintiffs that these allegations, for conduct occurring before August 8, 1995, are not preempted by section 332(c)(3)(A) since that section's preemptive force was not in effect in California until that time.

Defendants have demurred solely on the ground of section 332(c)(3)(A) preemption. As we have seen, before August 8, 1995, California had certain regulatory powers over cellular rates. (See e.g., Pub. Util. Code, § 728; see also 47 U.S.C. § 332(c)(3)(B); *Los Angeles Cellular Telephone Co. v. Superior Court, supra,* 65 Cal.App.4th at pp. 1017-1018, fn. 6; *In re Petition of California to Retain Regulatory Authority Over Intrastate Cellular Service Rates, supra,* 11 F.C.C.R. 796.) Defendants maintain that allowing plaintiffs

to pursue the pre-August 8, 1995 portion of their "rate case" would still result in a form of preempted state rate regulation. We disagree. Again, California *could* regulate cellular rates in certain ways before August 8, 1995.[2]

That the pre-August 8, 1995 portion of plaintiffs' "rate case" survives defendants' demurrer is most pointedly illustrated by plaintiffs' seventh cause of action. In that cause of action, plaintiffs allege that defendants billed for charges in violation of the tariffs the defendants had to file with the PUC; this cause of action, by definition, involves conduct over which California had regulatory authority. In fact, in *Los Angeles Cellular Telephone Co. v. Superior Court, supra,* 65 Cal.App.4th 1013, the lead defendant in the case before us argued successfully that a limitation on liability contained in its PUC-filed tariff applied to it; the relevant tariff in *Los Angeles Cellular* was filed in 1989, the relevant events occurred in 1994, and the preemptive force of section 332(c)(3)(A) was not effective until August 1995. (65 Cal.App.4th at pp. 1016-1017, fn. 3.) What is sauce for the goose is sauce for the gander. A similar analysis applies to plaintiffs' fifth, sixth, eighth, and ninth causes of action for conduct from January 1987 through August 7, 1995. We express no views on the merit of these pre-August 8, 1995 portions of these causes of action. We simply decide that these portions are not preempted by section 332(c)(3)(A).[3]

---

[2]In arguing that plaintiffs' claims are preempted regardless of when the conduct complained of occurred, defendants cite *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 273 [114 S.Ct. 1483, 1501, 128 L.Ed.2d 229, 257] for the principle that "a court should 'apply the law in effect at the time it renders its decision[.]' " *Landgraf* concerned the applicability of a particular section of the Civil Rights Act of 1991. The passage in *Landgraf* from which defendants quote states more fully: "Although we have long embraced a presumption against statutory retroactivity, for just as long we have recognized that, in many situations, a court should 'apply the law in effect at the time it renders its decision[.]' " (511 U.S. at p. 273 [114 S.Ct. at p. 1501].) *Landgraf* discussed the interplay of these principles, citing to a decision as an example, and concluded, "[o]ur application of 'the law in effect' at the time of [the decision] was simply a response to the language of the statute." (*Ibid.*) The same can be said here. We have simply applied the language of the statute, 47 United States Code section 332(c)(3)(B).

Defendants acknowledge that plaintiffs have a federal remedy for unjust or unreasonable cellular charges, practices, classifications and regulations that occurred after August 8, 1995. (47 U.S.C. §§ 201(b), 207.)

[3]We deny plaintiffs' first request for judicial notice, regarding the pre-August 8, 1995 tariffs filed by certain defendants with the PUC. We have upheld against demurrer the cause of action that alleges these tariffs were violated (the seventh cause of action). Plaintiffs will now be held to their proof.

We have also denied plaintiffs' second request for judicial notice, which encompassed many of the FCC rulings we have already discussed as well as some advertising materials of defendants.

### 3. *Plaintiffs' Challenges to Defendants' Disclosure of the Rates Being Charged*

Plaintiffs have also alleged that defendants concealed, inadequately disclosed or misrepresented the particular charges that plaintiffs challenge: rounding up (second cause of action); billing from "send to end" (third and fourth causes of action); ring time for complete (connected) calls only (fifth and sixth causes of action); overcharging for incomplete calls (seventh cause of action); and "lag time" disconnection (eighth and ninth causes of action). In each of these causes of action, plaintiffs have requested generically-phrased injunctive and restitution relief that can be applied to a nondisclosure claim.

As we have alluded to previously, section 332(c)(3)(A) does not preempt a plaintiff from maintaining a state law action in state court for an alleged *failure to disclose* a particular rate or rate practice; section 332(c)(3)(A) only preempts a state law action challenging the reasonableness or legality of the particular rate or rate practice itself. (See *Weinberg v. Sprint Corp.* (D.N.J. 1996) 165 F.R.D. 431, 438-439; *In re Long Distance Telecommunications Litigation* (6th Cir. 1987) 831 F.2d 627, 633-634; *DeCastro v. AWACS, Inc., supra,* 935 F.Supp. at pp. 550-551; *Comcast Cellular, supra,* 949 F.Supp. at pp. 1199-1201; *Sanderson, supra,* 958 F.Supp. at pp. 955-956; *Day v. AT & T Corp.* (1998) 63 Cal.App.4th 325, 328-329, 336-340 [74 Cal.Rptr.2d 55]; *Tenore, supra,* 962 P.2d 104, 107, 111-115; *In re Southwestern Bell Mobile Systems, Inc., supra,* 14 F.C.C. 99-356, ¶ 23.) This is because section 332(c)(3)(A) prohibits a state from regulating "the entry of or the rates charged by" any cellular service, but allows a state to regulate "the other terms and conditions," including "customer billing information" and "other consumer protection matters." (See *Tenore, supra,* 962 P.2d at p. 111; see also H.R.Rep. No. 103-111, *supra,* 1993 U.S. Code Cong. & Admin. News, p. 588.)

Under our standard of review for a demurrer sustained without leave to amend, there is a reasonable possibility that plaintiffs can allege state law causes of action based on inadequate disclosure of noncommunication time charges (nondisclosure as an unfair or unlawful business practice under Bus. & Prof. Code, § 17200 et seq.), and a sufficient remedy as part of that action (injunctive relief). (See *Comcast Cellular, supra,* 949 F.Supp. at p. 1201.)[4] Since section 332(c)(3)(A)'s preemptive power does not apply in this disclosure arena, the effective date of section 332(c)(3)(A) in California (Aug. 8, 1995) is irrelevant to these causes of action.

---

[4]At this juncture, we express no views on the possibility of restitution as a remedy. (See *Comcast Cellular, supra,* 949 F.Supp. at p. 1201; see and compare *Day v. AT & T Corp., supra,* 63 Cal.App.4th at pp. 336-340, with *Tenore v. AT&T Wireless Services, supra,* 962 P.2d at pp. 108-115; see also *In re Long Distance Telecommunications Litigation, supra,* 831 F.2d at pp. 632-634.)

## DISPOSITION

The judgment is reversed. Plaintiffs are granted leave to amend their complaint consistent with the views expressed herein. Each side shall pay its own costs on appeal.

Blease, Acting P. J., and Callahan, J., concurred.

Petitions for a rehearing were denied July 7, 2000, and the opinion was modified to read as printed above. The petitions of plaintiffs and appellants and respondents Los Angeles Cellular Telephone Company and Pacific Bell Mobile Services for review by the Supreme Court were denied September 27, 2000. Werdegar, J., did not participate therein.